United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHITE PACIFIC SECURITIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> LUCY MATTINEN and JOHN MATTINEN, <br><br> Defendants. | Case No.: 12 cv 151 YGR <br><br> **ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** |

Plaintiff White Pacific Securities, Inc. ("WPS") brings the instant action seeking injunctive and declaratory relief against Defendants Lucy Mattinen and John Mattinen ("Defendants" or "the Mattinens") to prevent them from continuing with an arbitration proceeding initiated by the Mattinens before the Financial Industry Regulatory Authority ("FINRA") against Plaintiff WPS and third party Krittibas Ray ("Ray").

On February 13, 2012, WPS filed its motion for temporary restraining order. WPS contends that it cannot be compelled to arbitrate the Mattinens' claims against it because the Mattinens never entered into any arbitration agreement with WPS and were not "customers" of WPS within the meaning of FINRA Rule 12200. On February 16, 2012, the Court denied WPS's request for a temporary restraining order, but set the matter for a hearing on the propriety of a preliminary injunction. Although Plaintiff was given the opportunity to file additional papers in

support of a preliminary injunction, none were filed at the time of service of the order. The Mattinens timely filed their opposition and WPS filed its reply.[1]

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby DENIES Plaintiff's request for preliminary injunction.[2]

## SUMMARY OF FACTS

The Mattinens filed an arbitration claim against Ray and WPS in March of 2011 before FINRA. The claim alleges that Ray: was a FINRA-registered associated person of WPS; breached his fiduciary duties to the Mattinens; made material misrepresentations to the Mattinens; and used their funds for his personal expenses rather than investing them. As to WPS, the claim alleges that: it was a broker/dealer registered with FINRA; Ray was its agent; and it failed to supervise Ray. The Mattinens allege that WPS was in the business of marketing investment opportunities and that they dealt with Ray and others at WPS with the understanding that they were registered associated persons and employees of WPS.

In support of Defendants' assertion of an arbitration claim against WPS, Lucy Mattinen avers that when Ray provided information about the Ray Pacific Global Opportunity Fund ("Ray Pacific"), he listed his address at White Pacific as his contact on the brochure and on his business card. Ray solicited the Mattinens' investment through multiple communications with the Mattinens. (Declaration of Lucy Mattinen, Dkt. No. 13-1, "Mattinen Dec." ¶4, 5.) When Lucy Mattinen contacted Ray by phone, WPS answered the phone call. When she contacted him by email, it was at his WPS email address. (*Id.* at ¶ 5.) When she met with Ray, it was at the WPS office in San Francisco and another WPS-associated person, Kim Wong, met with her in the office as well. (*Id.* at ¶ 5.)

---

[1] WPS did not file and serve its reply papers on the preliminary injunction timely. The Court nevertheless considered the reply in reaching the decision herein.

[2] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds that this motion, which has been set for hearing on March 27, 2012, is appropriate for decision without oral argument. Accordingly, the Court VACATES the hearing set for March 27, 2012.

The Mattinens contend that they invested $200,000 in the Ray Pacific fund on or about February 19, 2010. They received emails from Ray, using his WPS email, claiming substantial profits from trading. Their first statement did not come until July 3, 2010, and reflected an initial investment of only $50,000, and a loss of 41.5% of that $50,000. On or about July 3, 2010, the Mattinens requested their funds be returned to them by contacting Kim Wong at his WPS email address. They subsequently received another statement reflecting an initial investment of $100,000 and a loss of $38,000. However, their funds were not returned as requested. They then filed their FINRA arbitration claim against Ray and WPS.

WPS, for its part, denies any knowledge of the investment. In support of the request for injunctive relief, WPS submits the declaration of Robert T. Angle, current president of WPS. Therein, Angle confirms that WPS is a FINRA member. (Declaration of Robert T. Angle, Dkt. No. 4-4 ("Angle Dec."), ¶ 2.)[3] However, Angle states that the Mattinens never opened or maintained an account at WPS, and WPS was never the broker-dealer of record for the Mattinens' investment in Ray Pacific. (*Id*. at ¶ 6.) Angle asserts that WPS "never participated in, supervised, or received compensation or commissions related to" Ray Pacific, and has "no association in [Ray Pacific] or any investment in which Dr. Ray may have been involved." (*Id*. at ¶ 8.) He further avers that "WPS did not participate in, supervise, or receive commissions, referral fees, allowances or any other type of compensation related to any of Dr. Ray's investment advisory activities or Defendants' alleged investment. Such activities were independent of WPS's relationship with Dr. Ray." (*Id*. at ¶ 9.)

**LEGAL STANDARD**

A plaintiff seeking a preliminary injunction must establish four factors: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council. Inc.,* 555 U.S. 7,

---

[3] Plaintiff's reply indicates that WPS has withdrawn its FINRA membership recently, and since the filing of the Angle Declaration. (*See* Dkt. No. 16 at 2:25-26 (fn4).) No evidence is offered in support of this statement. However, the firm's termination of membership does not appear to affect a customer's ability to compel arbitration after the claim arises. *See* FINRA Rule 12202.

20, 129 S.Ct. 365, 374 (2008). While a plaintiff may establish the first two prongs by showing that there are "serious questions" going to the merits and the balance of hardships tips sharply in the plaintiff's favor, a preliminary injunction may issue only "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). A "serious question" is one on which the plaintiff "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software. Inc.,* 739 F.2d 1415, 1421 (9th Cir. 1984).

"An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 32 (2008). A preliminary injunction is an "extraordinary and drastic remedy," that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008) (internal citations omitted).

**ANALYSIS**

The burden is on WPS to demonstrate, first, that it is likely to succeed on its claim that it is not required to participate in an arbitration of claims against it by the Mattinens. WPS argues that it has no contractual agreement with the Mattinens to arbitrate claims and that it is not otherwise obligated to arbitrate claims under the applicable financial industry rules. The Mattinens concede that there is no written arbitration contract between them and WPS, but instead rely on the FINRA Rules to compel arbitration here.

The Financial Industry Regulatory Authority, or FINRA, is a quasi-governmental organization that, among other things, regulates brokerage firms and exchange markets and arbitrates claims against FINRA members that arise out of their securities dealings. FINRA was established in 2007 when the National Association of Securities Dealers, Inc. ("NASD") and the New York Stock Exchange ("NYSE") consolidated their member-regulation operations into one self-regulatory organization. *See Karsner v. Lothian,* 532 F.3d 876, 879 n. 1, 880 (D.C.Cir.2008) (citing SEC Release No. 34-56145 (July 26, 2007)). The rules applicable to FINRA members provide for arbitration of any dispute, claim or controversy arising out of the conduct of members or associated persons. See FINRA Rules 12100, 12200. "[E]ven if 'there is no direct written agreement to arbitrate ..., the [FINRA] Code serves as a sufficient agreement to arbitrate, binding

4

its members to arbitrate a variety of claims with third-party claimants.'" *O.N. Equity Sales Co. v. Steinke*, 504 F.Supp.2d 913, 916 (C.D.Cal., 2007) (quoting *MONY Secs. Corp. v. Bornstein*, 390 F.3d 1340, 1342 (11th Cir. 2004)).

FINRA Rule 12200 provides:
> Parties must arbitrate a dispute under the Code if:
>
> • Arbitration under the Code is either:
>
> (1) Required by a written agreement, or
>
> (2) Requested by the customer;
>
> • The dispute is between a customer and a member or associated person of a member; and
>
> • The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

FINRA Rule 12200.[4]  Rule 12100(r) of the FINRA Code defines an "associated person" as:

> (1) A natural person who is registered or has applied for registration under the Rules of FINRA; or
>
> (2) A sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not such person is registered or exempt from registration with FINRA under the By-Laws or the Rules of FINRA.  For purposes of the Code, a person formerly associated with a member is a person associated with a member.

Rule 12100(i) of the FINRA Rules defines "customer" as someone who is not a broker or a dealer.  Cases interpreting the rules have found that the term customer "should not be too

---

[4] FINRA Rule 12200 is substantively identical to former NASD Rule 10301, and cases interpreting it are equally applicable to interpretation of the FINRA Rules.  *See Herbert J. Sims & Co. v. Roven,* 548 F.Supp.2d 759, 763 n. 2(N.D.Cal.2008).

5

narrowly construed, nor should the definition upset the reasonable expectations of FINRA members." *Herbert J. Sims & Co. v. Roven,* 548 F.Supp.2d 759, 764 (N.D.Cal.2008).

The Mattinens contend that: (1) both Ray and WPS are FINRA members; (2) the Mattinens are customers of Ray; and (3) Ray is an "associated person" of WPS. Their claims are against Ray for his affirmative conduct and against WPS are for its failure to supervise Ray. The Mattinens contend that they were dealing with Ray and Ray was a registered representative of WPS, making the Mattinens customers of WPS for purposes of Rule 12200. They claim that WPS failed to supervise its "associated person," Ray.

There appears to be no dispute that the Mattinens are neither brokers nor dealers, and therefore not excluded from the definition of "customer" on that basis. Moreover, there appears to be no dispute that the Mattinens are customers of Ray and can demand arbitration as against him on that basis. The question at issue here is whether the Mattinens can demand arbitration as against WPS, *i.e.* whether the relationship between Ray and WPS is sufficient to find that, as customers of Ray, the Mattinens are likewise customers of WPS.

While the Ninth Circuit has not reached the issue, decisions of several circuit courts have held that customers of an "associated person" are "customers" of the member as well for purposes of compelling arbitration under the FINRA (formerly NASD) Rules. *See California Fina Group, Inc. v. Herrin*, 379 F.3d 311 (5th Cir. 2004); *Washington Square Securities, Inc. v Aune,* 385 F.3d 432, 436-37 (4th Cir. 2004); *Mony Sec. Corp. v. Bornstein,* 390 F.3d 1340, 1344 (11th Cir.2004); *Vestax Securities Corp. v. McWood*, 280 F.3d 1078, 1082 (6th Cir. 2002); *John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48, 59 (2d Cir.2001).[5] Further, district courts in this circuit that have examined situations nearly identical to the one presented here have concluded that, even if the FINRA-member broker-dealer was not involved directly as the account issuer or as a participant

---

[5] Indeed, as one court has noted, "when Rule 12200 was proposed, the addition of the words 'of a member' after the word 'customer' w[as] explicitly rejected because it would 'narrow the scope of claims that are required to be arbitrated under the Customer Code.'" *Waveland Capital Partners, LLC v. Tommerup*, 2012 WL 70572, 6 (D.Mont., January 6, 2012) (citing *Order Approving Proposed Rule Change to Amend NASD Arbitration Rules for Customer Disputes,* 72 Fed.Reg. 4574, 4579 (2007)).

in the transaction giving rise to the dispute, the broker-dealer may still be required to arbitrate claims arising from the conduct of its "associated person" involved in the transaction. *See O.N. Equity Sales Co. v. Maria Cui*, 2008 WL 170584, *3 (N.D.Cal., January 17, 2008); *Steinke*, *supra*, 504 F.Supp.2d at 917. Thus, a direct customer relationship between the Mattinens and WPS is not necessary, nor is direct involvement in the investment fund or decisions at issue.

The weight of the evidence indicates that Ray was an "associated person" of WPS. Lucy Mattinen declares that she personally reviewed the FINRA BrokerCheck Report for Ray and that the report shows that he was registered with White Pacific Securities, Inc. from August 2006 to September 2010, and thus during the period of the transactions at issue here. (Mattinen Dec. at 3:1-3.) This alone appears sufficient to satisfy the FINRA Rules. *See* FINRA Rule 12100(r)(1).

The Mattinens also submitted evidence that during their business dealings with Ray and in the materials concerning Ray Pacific, Ray used a WPS email address, WPS physical address, and WPS phone number in his interactions with them. (Mattinen Dec. ¶ 4, 5.) They also offer evidence that at the time they made the investment they met with Ray and with Kim Wong, another WPS-associated person. (*Id.* at ¶ 6.) Additionally, when they sought to withdraw their investment, they contacted Kim Wong. (*Id.*)

While conceding that WPS had a "relationship" with Ray, WPS makes a conclusory statement that it did not "participate in, supervise, or receive commissions, referral fees, allowances or any other type of compensation related to any of Dr. Ray's investment advisory activities or Defendants' alleged investment." (Angle Dec. ¶9.) However, WPS avoids disclaiming that it had any direct or indirect control over Ray in his investment banking or securities business activities. *Compare* FINRA Rule 12100(r)(2). Likewise, the declaration avoids a statement about whether Ray was registered with WPS. In short, the declaration does nothing to establish that Ray was not an "associated person" of WPS. Thus, WPS fails to meet its burden on this key factual of Ray's status as an "associated person."

Here, the failure to supervise claim clearly "arises in connection with the business" of WPS. Moreover, Ray's conduct during the time that he was an associated person of WPS makes the Mattinens customers of WPS as well for purposes of compelling arbitration.

7

To the extent that WPS rests its argument on the assertion that its relationship with Ray was "independent" of Ray's activities in connection with investment in Ray Pacific, and that WPS was "unaware" of Ray's conduct in connection with that fund, the argument lacks merit. While such a distinction may bear on WPS's ultimate liability, it has no significance to the question of whether arbitration is required here. Under the FINRA Rules, there is no exemption from the obligation to arbitrate claims based upon an assertion that the activities of the associated person were unknown to the firm or were outside the normal scope of the relationship.

Further, WPS's reliance on the Northern District decision in *Wachovia Securities, LLC v. Raifman*, 2010 WL 4502360 (N.D. Cal., Nov. 1, 2010) is misplaced. There, the court rejected an argument based on the premise that because two individual persons were account holders, their customer status should be imputed to corporate entities in which they were sole members or beneficial owners. *Id.* at *1. The Court found not only that the corporate entities themselves had no account with the brokerage firm, but the evidence showed that the individual persons did not hold accounts either. *Id.* at *7. Moreover, neither the individuals nor the corporate entities had received investment advice from the broker against whom the claim was made, but instead had been advised about the investment by their own separate, unassociated financial advisor. *Id.* at *7. The only connection between the broker firm and the corporate entity defendants was that the individual defendants, *in their capacity as trustees for an inter vivos trust*, had an account with the firm. While the trust and trustees were undisputedly customers of the firm, the court found that no customer relationship could be established between the broker and the other corporate entities. The corporate and individual defendants' "relationships with [the firm p]laintiffs are too tenuous for [p]laintiffs to reasonabl[y] expect that they would be subject to FINRA arbitration." *Id.* at *8. By contrast here, the Mattinens' connection with WPS is not at all attenuated, but is established by the direct conduct of Ray, an associated person of WPS, dealing with the arbitration claimants, the Mattinens.

It is noteworthy that WPS, in its reply papers, WPS does not point to any authority to counter defendants' argument that a customer of its "associated person" is a "customer" of WPS, nor does WPS attempt to show that Ray is not an associated person.

8

Having failed to establish a likelihood of success on the merits of its claims, the Court need not address the other factors relative to granting the preliminary injunction.

## CONCLUSION

For the foregoing reasons, the motion for preliminary injunction is DENIED.

**IT IS SO ORDERED.**

March 19, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**